1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

9   Jennifer Littlejohn,                              No. CV-18-04250-PHX-SMB

10                      Plaintiff,                     **ORDER**

11   v.

12   Phoenix Title Loans LLC,

13                      Defendant.

14

15          Pending before the Court is Defendant Phoenix Title Loans LLC's Motion to

16   Dismiss Plaintiff's First Amended Complaint ("FAC"), (Doc. 42, "Mot."). Plaintiff

17   Jennifer Littlejohn responded, (Doc. 43, "Resp."), and Defendant replied, (Doc. 44,

18   "Reply"). Neither party requested oral argument and the Court elects to resolve the Motion

19   without it. *See* LRCiv 7.2(f). Defendant moves to dismiss for lack of subject matter

20   jurisdiction.[1] (Mot. at 9 ("[Defendant] respectfully requests that Plaintiff's [FAC] . . . be

21   dismissed pursuant to Article III of the United States Constitution.")). Having considered

22   the pleadings and applicable law and accepting the allegations as true, the Court will grant

23   the Motion.

24   **I.      BACKGROUND**

25          Ms. Littlejohn received a $700.00 car title loan from Defendant for unidentified

26   _____

[1] Defendant also appears to move to dismiss under Federal Rule of Civil Procedure
27   12(b)(6). (*See* Mot. at 1 ("Plaintiff's amended causes of action are not plausible and fail on
their face.")). Only if the Court finds that Ms. Littlejohn has alleged standing will it address
28   Defendant's 12(b)(6) arguments. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341
(2006) ("If a dispute is not a proper case or controversy, the courts have no business
deciding it, or expounding the law in the course of doing so.").

personal, family or household purposes around April 24, 2018. (Doc. 40, "FAC" ¶¶ 12-13, 16-17.) The loan's terms required that she repay the borrowed amount by May 24, 2018. (Doc. 40-1 at 2.) The one-month loan agreement also included Truth in Lending Act ("TILA") disclosures. (*Id.*) It listed the amount financed as $700, a 156% annual percentage rate, $118.30 finance charge, and $791.00 as the total of payments, but provided no payment schedule.[2] (*Id.*; FAC ¶¶ 18-21.)

Based on these disclosures, Ms. Littlejohn initially brought two TILA claims under 15 U.S.C. § 1638(a)(5) and (6). (*See* Doc. 1 ¶¶ 23-30.) The Court dismissed this initial complaint with leave to amend because it "allege[d] no concrete harm, or material risk of harm, caused by Defendant's violation of the disclosure requirements at issue." *See Littlejohn v. Phoenix Title Loans LLC*, No. CV-18-04250-PHX-SMB, 2020 WL 209936, at *2-5 (D. Ariz. Jan. 14, 2020). The Court reasoned that it "*only* alleges Defendant's disclosure statement violated the TILA's disclosure requirements. Nothing more." *Id.* at *4. As a result, "[w]ithout any sort of allegations of concrete harm or material risk of harm to Plaintiff's informed use of credit by Defendant's disclosure violations, Plaintiff's Complaint [fell] short of alleging a concrete injury and the Court lack[ed] subject matter jurisdiction to hear the case." *Id.*

Ms. Littlejohn now once again brings these same claims, in addition to a new one under 15 U.S.C. § 1638(a)(3). (*See* FAC ¶¶ 37-49.) The FAC alleges "Defendant . . . failed to disclose the number, amount, and due dates or period of payments scheduled to repay the total of payments," "disclos[ed] an incorrect 'total of payments,'" and "disclos[ed] the 'finance charge' as $118.30, when the actual 'finance charge' is $179.34." (*Id.* ¶¶ 40, 45, 49). It further alleges that the omitted payment schedule and incorrect total of payments and finance charge "confused [her] as to the terms of her loan" and "as to when her payments were due." (*Id.* ¶¶ 30, 33.) These alleged failures prevented Ms. Littlejohn from

---

[2] Six months after the loan issued, Phoenix Pawn & Gold generated an amortization schedule for it, had it been issued for twelve months instead of one. (Doc. 40-2 at 2.) Ms. Littlejohn alternatively alleges this schedule memorializes the "loan's actual details" instead of the loan agreement. (FAC ¶¶ 22-29.) The Court rejects these allegations founded upon an *ad hoc*, manufactured amortization schedule.

having "an accurate TILA disclosure statement with which to shop for further credit transactions with other potential lenders or with Defendant" even though she never considered other sources of credit. (*Id.* ¶ 31.) On July 6, 2018, well after the loan's May 24 repayment date, Ms. Littlejohn made her first payment on the loan, which "exposed her to repossession, late charges, and additional finance charges." (*Id.* ¶ 36.) Based on these allegations, Defendant moves to dismiss for lack of standing. (*See* Mot. at 1.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. *See Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011) ("Article III standing is a species of subject matter jurisdiction."). Article III of the United States Constitution "endows the federal courts with the 'judicial Power of the United States.'" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (quoting U.S. Const. art. III, § 1). "The judicial Power of the United States" only extends to "Cases" and "Controversies." U.S. Const. art. III, §§ 1-2. "No principal is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy . . . [that] developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo*, 136 S.Ct. at 1547 (citing *Raines*, 521 U.S. at 820). Plaintiff has the responsibility of establishing standing, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992), and must do so for each claim brought as well as the type of relief sought. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). To do this for each claim, "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S.Ct. at 1547.

## III.   DISCUSSION

Ms. Littlejohn's current allegations virtually mirror those brought in her initial complaint except for a handful of new ones. (*See* FAC ¶¶ 17-18, 22-36, 46-49.) She argues these new ones establish she has standing to bring each of her three claims. (Resp. at 11-13.) Defendant disagrees. It argues "[she] has not suffered an injury in fact, that is fairly traceable to [Defendant] or that will likely be redressed by a favorable decision." (Mot. at 1.) As a result, it requests dismissal under Article III of the United States Constitution. (*Id.* at 9.) Even notwithstanding Ms. Littlejohn's failure to even *discuss* the traceability and redressability prongs, which alone is unhelpful to her attempt at establishing standing, Defendant is right.

### A. <u>Injury in Fact</u>

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks, citations, and footnote omitted). A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S.Ct. at 1549; *see also Summers*, 555 U.S. at 496 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing."). "In other words, even when a statute has allegedly been violated, Article III requires such violation to have caused some real—as opposed to purely legal— harm to the plaintiff." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017).

> 1. <u>The Alleged Procedural Violations Here Indicate No Harm or Material Risk of Harm to Ms. Littlejohn's Informed Use of Credit.</u>

Ms. Littlejohn argues, without much explanation or application to her alleged circumstances, that the FAC "alleges that Defendant committed several disclosure violations which themselves convey standing." (Resp. at 11-12.) Not true. *See Spokeo*, 136 S.Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation."); *Robins*, 867 F.3d at 1112 ("[T]he mere fact that Congress said a consumer like [plaintiff] may bring such a suit does not mean that a federal court necessarily has the power to hear it."). Her invitation to once again ignore Article III so she

can bring her claims is unconvincing. *See Littlejohn*, 2020 WL 209936, at *3 ("unlike as Plaintiff suggests, this is not enough in itself"); *see also Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) ("[E]ven where, as here, Congress has statutorily conferred legal interests on consumers [under the TILA], a plaintiff only has standing to sue if she can allege concrete and particularized injury to that interest."); *Kelen v. Nordstrom, Inc.*, 259 F. Supp. 3d 75, 79 (S.D.N.Y. 2016) ("[A] plaintiff cannot demonstrate that she has suffered a concrete injury by alleging a statutory violation alone."); *Danger v. Nextep Funding, LLC*, 355 F. Supp. 3d 796, 806 (D. Minn. 2019) ("[C]ourts have found that allegations of bare procedural TILA violations fail to satisfy *Spokeo*'s injury-in-fact requirements."); *Jamison v. Bank of America, N.A.*, 194 F. Supp. 3d 1022, 1028 (E.D. Cal. 2016) ("[A] procedural violation of the TILA requirements . . . does not inherently establish concrete harm."); *Summers*, 555 U.S. at 496 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."). This is because, although "a court is properly respectful of Congress's judgment in affording a legal remedy for [intangible] harm[,] . . . Congress's 'role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Strubel*, 842 F.3d at 188-189 (quoting *Spokeo*, 136 S.Ct. at 1549). "In short," and just as the Second Circuit found, this Court also concludes that "some violations of statutorily mandated procedures may entail the concrete injury necessary for standing," while others might not. *Strubel*, 842 F.3d at 189. To be more clear, this is the case when "Congress confers a procedural right in order to protect a concrete interest" and "violation of the procedure . . . demonstrate[s] a sufficient 'risk of real harm' to the underlying interest." *Id.* (quoting *Spokeo*, 136 S.Ct. at 1549). "Put slightly differently, . . . even if Congress determined that inaccurate credit reporting generally causes real harm to consumers, it cannot be the case that every trivial or meaningless inaccuracy does so." *Robins*, 867 F.3d at 1116.

Nor do the alleged bare procedural violations at issue in this case, by themselves,

necessarily harm or create a risk of real harm to Ms. Littlejohn's concrete interests as she suggests. *See Strubel*, 842 F.3d at 190 ("[E]ven where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest." (citing *Spokeo*, 136 S.Ct. at 1549)); *see also Jamison*, 194 F. Supp. 3d at 1028 ("A procedural violation of the TILA provision may result in no concrete harm if the lender provides the omitted information through other means." (citing *Spokeo*, 136 S.Ct. at 1550)). In other words, "while [a plaintiff] may not show an injury-in-fact merely by pointing to a statutory cause of action, the Supreme Court also recognized that *some* statutory violations, alone, do establish concrete harm." *Robins*, 867 F.3d at 1113. Before vacating and remanding the Ninth Circuit's opinion to determine "whether the particular procedural violations [of the Fair Credit Reporting Act] alleged . . . entail a degree of risk sufficient to meet the concreteness requirement," the Supreme Court noted these specific instances where statutory violations themselves conferred standing. *See Spokeo*, 136 S.Ct. at 1549-50. These instances included violations addressed in *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998) (finding voters' "inability to obtain information" that Congress decided to make public a sufficient injury in fact), and *Public Citizen v. Dept. of Justice*, 491 U.S. 440, 449 (1989) (holding that advocacy groups' inability to obtain Federal Advisory Committee Act disclosures "constitutes a sufficiently distinct injury to provide standing"). To be sure, the Supreme Court did not highlight any TILA case. Nonetheless, the Second Circuit's opinion in *Strubel* applies this same reasoning to the TILA in finding injury in fact for only two of the four alleged procedural violations. *See Strubel*, 842 F.3d at 190.

In brief, this means that "an alleged procedural violation [of a statute] *can* by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents 'a real risk of harm' to that concrete interest." *Robins*, 867 F.3d at 1113 (quoting *Strubel*, 842 F.3d at 190); *Lyshe v. Levy*, 854 F.3d 855, 859 (6th Cir. 2017) ("*Spokeo* allows for a bare

procedural violation to create a concrete harm . . . [based on] the failure to comply with a statutory procedure that was designed to protect against the harm the statute was enacted to prevent."); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding standing where alleged statutory violations "present[ed] the precise harm and infringe[d] the same privacy interests Congress sought to protect in enacting the [Telephone Consumer Protection Act]"); *Keen v. JPMorgan Chase & Co.*, 699 Fed. App'x 683, 683 (9th Cir. 2017) (finding that "plaintiffs' allegation that [defendant] violated TILA by understating a finance charge satisfies the Article III injury-in-fact requirement"); *see also McQuinn v. Bank of America, N.A.*, 656 Fed. App'x 848, 849 (9th Cir. 2016) ("We recognize that [*Spokeo*] calls into question whether a violation of the Truth in Lending Act's notice requirement, 15 U.S.C. § 1641(g), without more, creates an injury that is sufficiently concrete to confer standing."). However, this is only the case sometimes; it is by no means a blind constitutional inquiry as Ms. Littlejohn suggests. *Cf. Robins*, 867 F.3d at 1112. In determining whether a procedural violation is enough, courts look to "(1) whether the statutory provisions at issue were established to protect [plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.* at 1113; *Spokeo*, 136 S.Ct. at 1549; *Strubel*, 842 F.3d at 190.

The answer to the first question is clear. Congress crafted the TILA and its disclosure requirements, including the ones at issue in this case, to protect consumers' "informed use of credit." *See* 15 U.S.C. § 1601(a). The Act explicitly provides that:

> [E]conomic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

1   *Id.* The disclosure requirements alleged here undoubtedly protect consumers' "informed
2   use of credit" by demanding creditors give certain disclosures to potential borrowers so
3   that they may fairly evaluate and distinguish between different credit options. *See id.* §
4   1638(a)(3), (5), (6).

5          But as discussed above, just because Congress crafted these provisions to protect
6   consumers' informed use of credit does not mean violating one automatically harms the
7   underlying concrete interest. *See Spokeo*, 136 S.Ct. at 1550; *Raines*, 521 U.S. at 820 n.3
8   ("It is settled that Congress cannot erase Article III's standing requirements by statutorily
9   granting the right to sue to a plaintiff who would not otherwise have standing." (citation
10  omitted)). For instance, one can easily imagine how a creditor's failure to make an
11  inapplicable disclosure, or one that is readily understood from the loan agreement's terms
12  or based on a conversation between the parties, does not establish standing. *See Strubel*,
13  842 F.3d at 191-193; *see also Jamison*, 194 F. Supp. 3d at 1028. Thus, the question here is
14  "whether the specific procedural violations alleged in this case actually harm, or present a
15  material risk of harm to, [Ms. Littlejohn's informed use of credit]." *Cf. Robins*, 867 F.3d
16  at 1113. The Court holds that they are not.

17         Ms. Littlejohn took out a loan for $700.00 that was due a month later.
18  Notwithstanding how the loan was due one month later, her first TILA claim alleges
19  Defendant disclosed no payment schedule. (FAC ¶¶ 21, 37-40.) It is difficult to imagine
20  how Defendant's failure to include a payment schedule on Ms. Littlejohn's one-month loan
21  harmed or created a risk of real harm to her informed use of credit. *Cf. Spokeo*, 136 S.Ct.
22  at 1550. The contract's plain text makes it clear that the one and only payment was due one
23  month later.[3]

24         The second claim is no different. The FAC alleges Defendant incorrectly disclosed
25  the "sum of the amount financed and the finance charge, which shall be termed the 'total
26  of payments.'" (*See* FAC ¶¶ 41-44.) The loan agreement states that the $700.00 loan will

27

28  _____
    [3] Ms. Littlejohn tries to transform her loan into a twelve-month one by referencing a
    document that was never disclosed to her at the time of the loan and not part of the loan
    document. She cannot rewrite the loan in an effort to manufacture standing.

accrue interest at a 156% annual percentage rate with a $118.30 finance charge. (Doc. 40-1 at 2.) It nonetheless lists $791.00 as the "total of payments." (*Id.*) Recognizing that a $700.00 loan with a $118.30 finance charge does not equal $791.00, Ms. Littlejohn alleges that the correct "total of payments" should be $818.30 and sues. (FAC ¶ 44.) This allegation belies any contrary claim that this incorrect listing harmed or presented a serious risk of harm to Ms. Littlejohn's informed use of credit. *Cf. Robins*, 867 F.3d at 1113. In fact, it is even difficult to understand how Defendant's failure to add these numbers together, without more, necessarily impacted Ms. Littlejohn's informed use of credit. It is equally as difficult to understand how a mere $27.30 overstated total of payments, which appears to be a simple calculation error (as Ms. Littlejohn herself recognizes), harmed her Congressionally afforded interests. In absence of any attempt to seek alternative credit sources or consequences because of Defendant's failure to add these numbers, there is nothing showing how Ms. Littlejohn's borrowing was detrimentally impacted.

The last claim similarly falters, but on slightly different grounds. (FAC ¶¶ 46-49.) It alleges Defendant incorrectly disclosed the "'finance charge' as $118.30, when the actual 'finance charge' is 179.34." (*Id.* ¶ 49.) While it is unclear where Ms. Littlejohn gets this number from as it appears nowhere in the loan agreement, (*see* Doc. 40-1 at 2-3), the TILA requires that a creditor disclose the finance charge. 15 U.S.C. § 1638(a)(3). The loan agreement did that, and Ms. Littlejohn's bald conclusion that it was incorrect is not enough to allege injury, especially when there is nothing showing how this "incorrect" number impacted her credit usage. Defendant also certainly cannot manufacture standing based on an allegation that this number was "incorrect" without any support for such an accusation. Therefore, since Defendant made the disclosure, it is difficult to understand how Ms. Littlejohn's informed use of credit was harmed or faced a serious risk of harm.[4]

---

[4] The claim also fails under Federal Rule of Civil Procedure 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Nothing in the FAC supports the allegation that this number is incorrect or shows how it is. Such an allegation is tantamount to a legal conclusion, which cannot be accepted as true. *Iqbal*, 556 U.S. at 678.

1    In sum, none of Ms. Littlejohn's alleged procedural violations, by itself, supports

2    an injury in fact finding. *Id.* Indeed, she "has not alleged that she would have evaluated the

3    terms of her [loan] differently, made a different choice had she been presented with

4    additional information, or in any way behaved other than she did had [D]efendant not

5    committed its alleged violations of the [TILA]." *Cf. Cottle v. Monitech, Inc.*, No. 7:17-CV-

6    137-BO, 2017 WL 6519024, at *3 (E.D.N.C. Dec. 20, 2017), *aff'd*, 733 Fed. App'x 136

7    (4th Cir. 2018); *Kelen*, 259 F. Supp. 3d at 80 ("The [complaint] does not claim that

8    [plaintiff] changed her behavior in any way based on [defendant's] allegedly insufficient

9    disclosures"); *see also Danger*, 355 F. Supp. 3d at 807 (noting that whether plaintiff "*would*

10   *have* pursued alternative funding" had the TILA violations not occurred is a relevant

11   consideration); *Jamison*, 194 F. Supp. 3d at 1028 (reasoning that no allegation that these

12   statutory disclosures were not given through other means, *inter alia*, fails to show any harm

13   to plaintiff's underlying interests). Absent allegations establishing how Defendant's TILA

14   violations harmed or created a material risk of harm to her informed use of credit, the Court

15   finds that these bare procedural violations allege no concrete injury.

16            2.   No Allegations Otherwise Establish a Concrete Injury.

17   Ms. Littlejohn also claims the FAC alleges that Defendant's conduct injured her

18   aside from harming or creating a material risk of harm to her informed use of credit. (Resp.

19   at 12-13 (citing FAC ¶¶ 30-36)). Not quite. It alleges she was "confused about the terms of

20   her [one-month] loan [that was due on May 24, 2018]" and "when she had to repay it." (*Id.*

21   ¶¶ 19, 21-22, 28, 30, 33-34.) It further alleges she was deprived of "an accurate disclosure

22   statement with which to shop for further credit transactions with other potential lenders or

23   with Defendant," but not that she actually explored other credit opportunities. (*Id.* ¶ 31.) It

24   last alleges she defaulted on her loan because she made her first payment on July 6, 2018.

25   (*Id.* ¶ 36.) None of these allegations illustrate an injury withstanding constitutional

26   scrutiny.

27   At most, the FAC generally alleges Ms. Littlejohn was "confused as to when her

28   payments were due." (FAC ¶ 33.) Read most favorably to her, she was allegedly confused

because (1) she was not provided a payment schedule, (2) Defendant's marketing materials "lead [*sic*] her to believe her first payment was not due until several months following her loan date," and (3) "Defendant's internal records" indicated "[her] payment was due on May 24, 2018." (*Id.* ¶¶ 34-36.) However, alleging general confusion as to a loan's terms "is not the same as an allegation that she was oblivious as to the true cost of her [credit] transaction." *See Cottle*, 2017 WL 6519024, at *3. Nor will the Court read this general confusion about the loan's terms as an "informational injury" for standing purposes, as this theory is more appropriately resolved under *Spokeo*. *See Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251, 1259 (9th Cir. 2010) ("Even though these rights necessarily involve the dissemination of information, they are not thereby *tantamount* to a right to information per se."). Accordingly, Ms. Littlejohn's general allegations of confusion do not establish an injury in fact.[5]

Just alleging a deprivation of an accurate disclosure statement is likewise insufficient. *See Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."). There is nothing in the FAC alleging Ms. Littlejohn did or even would have shopped for other credit transactions had these disclosures be given. While the Court can certainly speculate that she did in fact shop around, that is not its job. *See id.* at 561 ("The party invoking federal jurisdiction bears the burden of establishing these elements."). Instead, this allegation essentially amounts to a cloaked procedural violation, which, as noted above, is insufficient under these circumstances.

Lastly, simply alleging that Ms. Littlejohn defaulted on her loan does not do it either. (*See* FAC ¶ 36.) In fact, the FAC alleges that this failure only "exposed her to repossession, late charges, and additional finance charges." (*Id.*) It says nothing about whether she

---

[5] Relatedly, and as noted above, the Court is unsure how a favorable ruling would redress Ms. Littlejohn's confusion. *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973); *see also Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 45-46 (1976). Defendant raised this challenge, but Ms. Littlejohn, bearing the burden of establishing standing, failed to respond to it.

actually suffered a subsequent financial injury. Nor does it allege any damages resulting from her failure to pay the loan. Even reading the allegations most favorably to her, the Court is left wondering how she was injured, if at all, or even if her failure to pay was caused by the disclosures. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) ("Abstract injury is not enough."). Again, the Court will not assume an unalleged, potential injury.[6]

## IV.   LEAVE TO AMEND

"Dismissal is a harsh penalty and is to be imposed only in extreme circumstances." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986) (citing *Raiford v. Pounds*, 640 F.2d 944, 945 (9th Cir. 1981). In accordance with well-settled law in the Ninth Circuit, the Court will grant Ms. Littlejohn leave to amend her complaint because "it is not 'absolutely clear' that [she] could not cure [the FAC's] deficiencies by amendment." See *Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014) (citations omitted); Fed. R. Civ. P. 15(a)(2) ("leave to amend should be "freely" given "when justice so requires").

Accordingly, within thirty (30) days from the date of entry of this Order, Ms. Littlejohn may submit a second amended complaint addressing the deficiencies identified above. Ms. Littlejohn must clearly designate on the face of the document that it is the "Second Amended Complaint." If she decides to file a second amended complaint, she is reminded that an amended complaint supersedes the original complaint, *see Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012), and it must be complete in itself and "must not incorporate by reference any part of the preceding pleading, including exhibits," LRCiv 15.1.

## V.   CONCLUSION

Ms. Littlejohn once again alleges mere procedural violations divorced from any harm or material risk of harm to her informed use of credit. *Cf. Robins*, 867 F.3d at 1113. She also has not otherwise alleged a concrete injury apart from harm or a risk of harm to

---

[6] As previously noted, Ms. Littlejohn makes no attempt at establishing that her injuries were caused by Defendant's conduct or that a favorable decision would redress them. *See Lujan*, 504 U.S. at 561. Nonetheless, the Court need not address these things since Ms. Littlejohn has failed to establish injury in fact.

her informed use of credit. Nonetheless, the Court is hesitant to dismiss the case with prejudice, and will give her another opportunity to fix these deficiencies.

Accordingly,

**IT IS ORDERED GRANTING** Defendant Phoenix Title Loans LLC's Motion to Dismiss Plaintiff's First Amended Complaint, (Doc. 42);

**IT IS FURTHER ORDERED** that Plaintiff may file a Second Amended Complaint within thirty (30) days of this Order's date. If no Second Amended Complaint is filed within thirty days, the Clerk of Court is directed to terminate this case without further order by the Court.

Dated this 15th day of May, 2020.

Honorable Susan M. Brnovich
United States District Judge

- 13 -